# SUPREME COURT.

### SAMUEL R. CHILDS, respondent, agt. EZIKIEL L. SMITH, appellant.

The *organization* of a manufacturing company, under the general law of the state, is
*not effected* until the filing of the *certificate* in the county clerk's office, and a *dupli-
cate* thereof with the secretary of state, as required by the act.

When a statute which grants a power or authority, expressly fixes limits, or declares
the time when such authority shall be exercised, or begin, all other time is
excluded.

Consequently where an agreement is made that one person shall pay to another a
certain sum of money on the *organization* of a certain manufacturing company, and
all the formalities of an organization, with proper certificates made and signed by
the corporators, are completed, except the filing of the certificate and duplicate as
required by the general act, an action brought to recover such sum of money is
*premature.*

*Fourth District, Caldwell, General Term, July,* 1869.
*Before* ROSEKRANS, POTTER *and* BOCKES, *Justices.*

APPEAL from a judgment entered upon the report of a
referee. The action was to recover $3,000, part of the
consideration of a farm conveyed to the defendant in the
town of Stratoga Springs. The defendant set up in his
defense, among other things, that the farm in question was
conveyed upon certain conditions to be paid for, in the
manner according to the agreement set up in the said
answer, and not otherwise; and that the conditions upon
which the payment was to be made have never been per-
formed, and also, that the sum mentioned to be paid was
conditional, depending upon an agreement on the part of
the plaintiff, which has never been performed.

The action was referred to a sole referee, who reported in
favor of the plaintiff, and directed judgment for $2253.91,
with costs. From this judgment, the defendant appeals.

The facts found by the referee, and his conclusions of law, are as follows:

*First.* That on the 18th day of April, 1869, the plaintiff was the owner of a farm of about one hundred and fifty acres, situated on Union Avenue, about two miles east of Saratoga Springs, in the county of Saratoga.

*Second.* That said farm was then incumbered by two mortgages amounting in the whole, including interest to that date, to the sum of about $10,000.

*Third.* That about fifty acres of said farm was muck and clay land, which the parties to this action then supposed was valuable for the purpose of manufacturing brick and peat therefrom.

*Fourth.* That on the said 18th day of April, 1869, the said plaintiff sold and conveyed to the defendant, the above mentioned farm, excepting about four acres therefrom, that the same were conveyed subject to the said two mortgages.

*Fifth.* That the agreement between the said parties, and under which the conveyance was made, was in substance as follows: The plaintiff to sell the said farm of one hundred and fifty acres, to the defendant for the price or sum of $20,000, to be paid by the defendant as follows: The defendant to assume and pay the two mortgages for $10,000; two thousand dollars to be deducted or allowed for the four acres reserved by the plaintiff; the palintiff to have one fourth or a one fourth interest in the above mentioned fifty acres of clay and peat land, for which he was to allow five thousand dollars on said purchase price; and the remaining sum of three thousand dollars to be paid by the defendant to the plaintiff in cash; as follows: one thousand dollars at or within a few days from the time of delivering the deed, and the remaining sum of two thousand dollars when the brick and peat company, (which the said parties then proposed to form,) should be organized. The said parties to form a company upon the said fifty acres of the clay and

peat land, with a capital of $150,000. The company to reserve seventy thousand dollars of the stock for working capital, the remainder of the stock to be divided as follows: one fourth part, $20,000, to belong to the plaintiff; one half $40,000, to belong to the defendant, and the other one fourth part $20,000, when the company was organized, plaintiff was to take and pay the defendant therefor, the sum of $5,000. The plaintiff stating to the defendant at the time, that he believed that if the interest was paid on the said two mortgages, which would be due about the 1st of July then next, the mortgages could remain, and he, the plaintiff, would see the mortgagees and endeavor to have them remain, if such interest was paid; but there was no agreement by the plaintiff to procure any extension of said mortgages or either of them.

*Sixth.* That upon the delivery of said deed, and on the said 18th day of April, 1867, the defendant took possession of the said farm and leased the same for farm purposes, reserving the right to use the said fifty acres of clay and peat lands for the purpose of developing the same.

*Seventh.* That upon receiving the said deed, or soon thereafter, the defendant made and delivered to the plaintiff his promissory note, payable at bank for $300, and on or about the 16th day of August, 1867, the defendant delivered to the plaintiff two acceptances for $350 each, one due in sixty days from date, and the other in ninety days from date, thus making the one thousand dollars that was to be paid by the defendant to the plaintiff on the delivery of said deed.

*Eighth.* That immediately after the said deed was delivered to the said defendant by the said plaintiff, the plaintiff, defendant and one William B. Laithe executed and acknowledged articles of incorporation (under the statute of the state of New York, in relation to the formation of corporations for manufacturing, mechanical and chemical purposes,) for the purpose of organizing a brick and peat company on

the said fifty acres of clay and peat land, as contemplated by said agreement. That such articles of incorporation were drawn up by the defendant, bearing date, April 29, 1867, and were duly acknowledged, before the proper officer, on the 3d day of May, 1867, that the amount of capital stock of said company mentioned in said articles, was one hundred and fifty thousand dollars.

*Ninth.* That upon signing said articles of incorporation and on the 30th day of April, 1867, the said plaintiff, defendant and William B. Laithe assumed to act as a corporation and met as such, electing officers and making provision for procuring or perfecting the title in the said fifty acres to the company; and at such meeting, defendant was elected president of said company; the plaintiff was elected vice president, and the said William B. Laithe was elected secretary and treasurer, and the defendant proposed rules and by-laws for the government of said corporation, which were adopted, and with the certificate of incorporation, and other proceedings were entered by direction of defendant in a book procured and used as the record book of said corporation. Action was also taken at said meeting in relation to completing the grounds and yards on said fifty acres, and procuring machines for the purpose of manufacturing, as soon as the company should decide what machine they would use for that place.

*Tenth.* The said articles of incorporation were never filed in the secretary of state's office, neither was a copy or duplicate made or filed in the clerk's office of the county of Saratoga; but the same by the directon of the defendant were delivered to said William B. Laithe to be filed in the secretary of state's office.

*Eleventh.* The defendant neglected to pay the interest on said mortgages when the same became due in July 1867, and the said mortgages were foreclosed by a sale of the mortgaged premises, and were purchased under said sale by John C. Hulbert, Esq., of Saratoga Springs, who is now the

owner thereof. That said sale embraces the said fifty acres of clay and peat land. The foreclosure was commenced soon after the 1st of July, 1867, and the premises were sold in the fall of 1867.

*Twelfth.* That after the foreclosure and sale of said premises under said mortgages, nothing more was done in relation to the organization of said corporation, and the same was abandoned.

*Thirteenth.* That the said defendant Smith, has not paid to the plaintiff the said sum of two thousand dollars or any part thereof.

*Fourteenth.* That the $20,000 of stock which by said agreement was to be taken by the plaintiff and five thousand paid thereof, was taken by the said William B. Laithe.

*Fifteenth.* That the brick and peat company as proposed to be formed by the parties hereto, was formed as between them and the said Laithe, and as regards third persons, and the same became and was a coporation *defacto*, and was so formed as between the parties hereto; that the contingency upon which the said two thousand dollars was to become payable, had happened before the commencement of this action.

*Conclusions of Law.*—I find as a conclusions of law that the defendant is indebted to the plaintiff in this action, in the sum of two thousand dollars, with interest thereon from the 1st day of July, 1867, amounting in the whole to the sum of two thousand two hundred and fifty-three dollars and ninety-one cents. That the same is due and was due at the time of the commencement of this action. I therefore, direct judgment to be entered in favor of said plaintiff and against the said defendant, for the sum of two thousand two hundred and fifty-three dollars and ninety-one cents, together with costs and disbursements to be adjusted.

J. C. HULBERT, *for plaintiff.*
J. A. SHOUDY, *for defendant.*

*By the court,* POTTER J.—If the learned referee has correctly found the facts in this case, I have found myself entirely unable to sustain his conclusion of law, that the defendant is indebted to the plaintiff in the sum of $2,000, with interest from the 1st day of July, 1867. He finds that an oral agreement between the parties, that this sum of $2,000 was to become due from the defendant to the plaintiff, when the brick and peat company, (which the said parties then in April, 1867, proposed to form,) should be organized, and in the same paragraph, he also finds, that when the said company was organized, the plaintiff was to take one fourth of the stock, over and above the working capital, and over and above the amount that was to be received in part payment of the farm, and to pay the defendant therefor, the sum of $5,000. By this finding, these two sums of money to wit $2,000 from defendant to plaintiff, and $5,000 from plaintiff to defendant, became due at the same identical period of time. It is the simplest logic that proves, that if at a given period the plaintiff became liable to pay to the defendant the sum of $5,000, that the latter could not at that monent be legally indebted to the former, but the reverse. There is nothing in the fourteenth finding of fact, that the plaintiff's portion of stock and the money to be paid therefor, was assumed to be paid by William B. Laithe, that releases the plaintiff from his liability to the defendant. No fact is anywhere found that the defendant agreed to any release of the plaintiff or change of liability of the plaintiff to him; the only legal inference is, that the defendant consented, that Laithe should own and pay plaintiff for such stock, and what is more inexplicable still to my mind, is, that these two cross liabilities of the parties can be created by the same oral agreement, relate to the same transaction, and equally depend upon the consummation of an enterprise for their existence as liabilities, from the one to the other and upon the same moment of time, to wit, upon the organization

of an incorporation to be called, " The Saratoga Brick and Peat Company," and yet the one party be held liable, and the other not.

If this company *was* organized, as is found by the learned referee, in his fifteenth finding of *fact*, but which I think, is a question of law, then the defendant was not on that day indebted to the plaintiff.

It is equally clear, that by the theory of the case, if the incorporation had not been, and was not formed before the commencement of this action, *then*, the period of the defendants indebtedness had not arrived according to the finding of facts by the referee. As I think, the organization of this company or the forming of an *incorporation*, is a question of law, it may be well to examine that question. The things performed by the parties, in order to constitute an organization, are matters of fact; whether the performance of those things constitute an organization, is a question of law. These are not changed in character by their classification, as facts, or law, in the findings. The referee, I think, correctly interprets the meaning and intent of the parties in their agreement, that by the organizing, or forming this company, they *intended* to create a corporation; and this, he holds, was the contingency upon which, the $2,000 became due. As the formation of this body cor porate, was not directly a legislative act, it could only become a corporation by a compliance with the provisions of the general act, which authorizes their organization. (*Chap.*, 40, *Laws of* 1848). Under this act, three or more persons may make, sign and acknowledge, before a proper officer, and file in the office of the clerk of the county in which the business of the company shall be carried on, and a duplicate thereof with the secretary of state, a certificate in writing, in which shall be stated, the corporate name of the company, and the objects for which the company shall be formed &c. It is found by the referee as a fact, that no certificate was filed in the office of the clerk, of Saratoga

county, and no duplicate was ever filed in the office of the secretary of state. How then, did they become a corporation, and when? How did they become such a corporation as by their agreement they intended? The second section of this statute *forbids* all *inferences* or *conclusions*, to be drawn from other acts of the parties as to this, by declaring *how*, and *when*, they can become a corporation, viz. " *When the certificate shall have been filed as aforesaid, the persons who shall have signed and acknowledged such certificate*, and *their successors, shall be a body politic and corporate, &c.*" There is no statute, and I have been unable to find any common law, that authorizes, or allows, of any *other time, when* a corporation has been or can be formed under this general law, than that of the time of *filing* the certificate and its duplicate as aforesaid. When a statue, which grants power, or authority, expresly fixes, limits or declares, the time *when* such authority shall be exercised, or begins, all other time is excluded.

The statute nowhere makes a *meeting* of the individuals who *intend* to constitute themselves the corporators, or any *resolutions* by-laws, choice of officers, or other formalities prior to the filing of such certificates, the *creation* of or the *evidence* of the existence of a corporation. They are not mentioned as having anything to do with its *creation*, nor do I know of any adjudication of any court to that effect. However, necessary or convenient, all these proceedings may be, to secure due organized action of its members, whether made before or after the incorporation itself, it confers no corporate power; no legal right to act. The preparation of books and by-laws, and the writing out of their proceedings therein before preparing their articles, is very good evidence of intent of parties in future to create a corporation, but is not made *legal evidence* of corporate power. They have still no *legal* existence, and no bill could be filed to dissolve them. The referee finds, that *this* action of the parties, was the formation of a corporation

*defacto*, as to *third* parties, and it was so formed as between the parties to this action. This finding was unnecessary and immaterial so far as relates to *third* persons; no such persons are concerned in the case, and such a finding, as between the parties, whom the law presumes, knew it was *not* true, was error. These parties are presumed to know the law, each party as well as the other *knew*, that no legal corporation had been formed. Each had a claim against the other, contingent, and to become due upon the formation of this corporation, which means a *legal* corporation. Each is presumed to know what requisites the law demanded, to create a corporation; each could make his demand against the other mature and due only, by a creation, in conformity with the provisions of the statute.

The only agreement or promise of the plaintiff to pay this $2,000, by the proofs, was conditional; the plaintiff could only recover by showing that condition to have been performed. The plaintiff, on his part, neither proceeded to secure such compliance with the law, nor made a demand of the defendant to make such compliance; and, of course, was met with no refusal by the defendant to act in the matter. His demand was not, therefore, due when he commenced his action; the period had not arrived *when*, by his agreement, it was to become due; he has not even put the defendant in default by showing a demand, and a refusal on his part to perfect the organization by which it was to become due. It was as much the duty of the plaintiff, as of the defendant to see that the organization and act of incorporation was perfected; indeed he was most in fault. When the articles for an incorporation had been prepared by the defendant, and signed and acknowledged by the intended corporators on the day of their execution, they were delivered by the defendant to the plaintiff; this appears from the plaintiff's own evidence. Instead of filing them with the clerk of the county and making and filing a duplicate with the secretary of state, as the statute required, he

kept it, and sent it to Wm. Laithe, at Albany, who did not receive it till the 20th July, and who then held it until after this action was commenced, which was on the 27th of November, and *he* then sent it to plaintiff's attorney. This Wm. Laithe is the party to the articles whom the referee finds was to take the plaintiff's stock, as a part of the arrangement. It may, or may not, be significant of design on the part of Wm. Laithe, who the referee finds was a party to the agreement, and who was to take and pay the plaintiff $5,000 for *his* stock when the corporation was formed, that he should delay its formation. His retaining the articles for so long a time without filing them, and afterwards sending them to the plaintiff's attorney, is certainly not chargeable to the defendant as a fault. It is very clear from the whole case, that the whole negotiation of the parties, and their understandings and agreements of liability to each other, was to depend upon the organization, incorporation, and success of a stock company for the manufacture of brick and preparation of peat, and that the failure and abandonment by the parties of that enterprise, carries with it the basis upon which the agreements to pay were made. If this is so, it is unjust that one of the parties should bear all the burdens of the failure. It is true, the defendant entered into possession of the farm; it is also true that he paid the plaintiff $1,000 of its consideration, and $300 of interest on the mortgages. The plaintiff entered into the possession of a part of the consideration money. The defendant's possession of the peat and clay land was as trustee for the future corporation. The defendant's possession of the remainder of the farm was subject to mortgages which all the parties knew endangered their future success, for they covered the *peat* lands also. Each of the parties, therefore, were bound to see the mortgages provided against.

The case cited by the plaintiff, to prove that corporations, or persons acting and holding themselves out to be such,

are estopped from denying their legal incorporation to third persons and to parties who have been induced to give credit to their representations, are not controverted. The proposition is sound, but has no application to this case. There was no holding out here, but among parties themselves, all equally well informed as to their legal rights; nobody was misled or deceived. What, then, was the intent of the parties by their agreement? Whose obligations were to become payable and mature upon the organization of the corporation? Was it to be *real*, and a legal corporation, or a mere bogus and sham organization? The subsequent action of the parties, as found by the referee, shows that the acts performed were not of what the law required to create a corporation. The articles were drawn up under the provisions of the act of 1848, in relation to the formation of corporations for manufacturing, mechanical and chemical purposes, for organizing a brick and peat company. It is clear then, that the parties contracted with reference to a *real* corporation; such as the statute authorizes; and to no other. I think the learned referee is also, mistaken as to there being a *defacto* corporation created. In no one of the cases cited, has there been the omission to file certificates of some kind, and of *user* on the part of the corporators under it. In such cases, where there has been *user*, defects in organization does not relieve them from liability as to third persons, and to others who have given credit. They are *then* a corporation *defacto ;* but as between themselves, all equally responsible for vitality, upon the performance of the act, which alone creates their existence, and without even an act of user, I think, they became a corporation *defacto,* neither in fact nor law. It appears to me, it is not only without precedent, but is little less than absurd, to characterize such acts, sufficient to create a corporation, even *defacto.* All these acts transpired three days before the signing of the articles; these acts were understood by all the parties, to be in contemplation

of a future organization of a corporation, and not to be acts that constituted it a corporation.

I have thus far treated the case, as adopting the correctness of the real findings of fact by the referee, and upon the assumption, that all the rulings on the trial, are without objection. If we are right in the views of the law above discussed, then the various rulings of the referee, in admitting in evidence the paper signed by them as evidence of the incorporation in question, was error. Its admission was objected to on that ground, and overruled and exception was duly taken. The ninth section of the statute, under which they proposed to organize, provides what shall be evidence of an incorporation under that act, to wit; section 9. "The copy of any certificate of incorporation, *filed* in pursuance of this act, certified by the county clerk or his deputy, to be a true copy, and the whole of such certificate, shall be received in all courts and places as presumptive legal evidence of the fact therein stated." No statute or common law rule can be found to sustain for that purpose, a paper so inchoate and imperfect as that allowed in this case. By a well established common law rule, the best evidence which the nature of the case permits, must be offered. If the best evidence offered fails to prove the existence of a corporation, it should not be received and acted upon, and the referee erred again after the plaintiff rested, in relying upon such proof to establish a corporation, and in refusing upon request to strike out such evidence.

The referee having acted upon this evidence in his findings, as he clearly shows, I think the judgment should be reversed for that reason. Upon the case, as it appears to me, the burden of proof being on the plaintiff, that he failed to make out his case. There is evidence however, if it had been legal, upon which the referee might have found as he did.

In such cases, though the reviewing court would have arrived at a different conclusion, we could not reverse upon

Childs agt. Smith.

that ground.   The referee saw the parties and witnesses, and could judge of their manner of testifying, which always carries with it, its proper influence, and the court will always hesitate to disturb findings of fact, where the referee is known to possess, as in this case, high legal professional skill and undoubted integrity.   I think, however, the errors both in the findings of fact upon illegal evidence, and the conclusions of law based thereon, in this case, demand a reversal of the judgment.